May it please the court, Tim Ashcraft on behalf of MultiCare Health System, Good Samaritan Hospital. The district court erred here in dismissing MultiCare's claims on a 12B6 motion by making inappropriate factual findings, by misinterpreting the law of self-insured retentions as well as negligent misrepresentation, and by not allowing MultiCare to amend its complaint. Counsel, there's a fair amount in your argument that seem pretty persuasive to me. Certificates of insurance are typically used to show third parties that there's adequate insurance. The cases that I've seen the most of are where the general requires all the subs to provide certificates to show that they have workers' comp and the general won't be stuck on workers' comp. This is a little different from that because it's liability insurance, general liability, rather than workers' comp liability. And I can see that. And what I want to know is I can't see any why here. I can't see a misrepresentation. And I'm not quite clear. The bank could certainly inquire or ask its contracting party, or I'm sorry, I misspoke. The hospital could certainly ask the temp service to show the bank its declarations pages from its insurance, and it didn't think of it evidently. I can't see a misrepresentation, and it's so common to have a self-insured retention. I don't quite see why there's anything deceptive, and I don't understand why there's a duty to say what the self-insured retention is on the certificate. I'm looking at ER 87, if that helps you. Okay. Your Honor, first of all, let's look back at what the district court did here. When we're talking about the negligent misrepresentation claim, that itself is two different claims. There's the affirmative misrepresentation and the omission. I can't see any affirmative misrepresentation. Understood. And the district court, of course, found there was a duty to avoid affirmative misrepresentations. Our allegation is, as found in our supplemental briefing, that ‑‑ You can't lie to them. You can't negligently misrepresent to them, but no evidence of it. Right. Well, remember, we're on a 12B6 motion, so the question is, what is the allegation? The allegation that we made ‑‑ I think the certificate was incorporated in the complaint, wasn't it? It was, Your Honor. So it's part of the complaint, and it's possible to plead yourself out of a case as well as into one. Well, Your Honor, I would cite to the Portland retail druggist case, if the district court had intended this to be a summary judgment motion, it had to give us notice of that and an opportunity for discovery. It's quite common to have 12B6s where the critical document, a contract of insurance or anything else, is attached to the complaint. So even though there is not a summary judgment, if the document is plain on its face, the court can read it in deciding 12B6. And the allegation here that we've made, Your Honor, is that within this industry, within the insurance industry, a policy that is listed anywhere other than the excess portion of the certificate of insurance is considered to be primary insurance. And that's part of the supplemental allegations that we made. And obviously, then, if it's an excess policy, there is a spot on the certificate of insurance form for the insurance broker to put the retention. As a matter of Washington law, the presence of a million-dollar self‑insured retention doesn't transform the primary policy into an excess policy, does it? I disagree, Your Honor, because Washington law. What's your best idea for that? The best idea for that, well, we have the Odessa case that we've cited. But when we look at all of the case law, both in Washington and out of Washington, all the case law discussing self‑insured retention looks at the specific situation of that case. You notice they cited, too, the Bordeaux case, which talks about subrogation. They talked about the Kierkegaard case, which talks about workers' compensation. In each of these cases, the court said, when we look at this fact pattern in this area, again, subrogation, workers' comp, what have you, that in those situations, we don't find self‑insurance to be insurance. In other situations, courts have found self‑insurance to be insurance. Even aside from that, though, right now I'm not finding the paragraph of the complaint that says it's custom of the industry to disclose a self‑insured retention on a certificate of liability. What happened, Your Honor, was the district court made an original order in March of 2012 and allowed us to do additional briefing. And in that briefing, he invited us to make supplemental allegations that we were ‑‑ You understand, I didn't ask you about the briefing. I asked you about the complaint. It's true that on 12B6 we have to take what the complaint says to the extent it's plausible and factual as true to see if it would state a cause of action. Just like an old‑fashioned demur. Now, I don't see the allegation in the complaint that it's a convention of the industry to list a deductible or self‑insured retention. You are correct, Your Honor. It is not. It is in, again, the supplemental allegations that were invited by the district court. And, of course, the case law states that it is error. So it's not in the complaint. That would mean a 12B6 dismissal would be right, and all that's at issue is whether you should have been granted leave to amend. Well, I would disagree in the sense that the case law is very clear that if an amendment is not futile, you must be given a chance to leave to amend. So that's what brings the supplemental allegations. Why are you disagreeing? That's what I just said. That's what he just said. So the point is, Your Honor, that the supplemental allegations that we did make bring us within a valid ‑‑ You're saying if you filed, your supplemental allegations in a brief have nothing to do with 12B6. They do not get the assumption that a complaint gets that what it says is true. All I can see that that goes to is leave to amend. So I'm not asking about leave to amend right now. I'm asking about the original complaint. And I would agree that the original complaint does not state the statement that you just made about it, the custom of the industry. Now, remember that in the negligent misrepresentation. You're saying that if you had been allowed to amend, you would have pleaded that. Yes, Your Honor. Okay, now I get it. Now, you're saying that it should have been in some other box after the disclosure. Yes, Your Honor. Which box? There's a box called excess slash umbrella liability on the certificate of insurance, a little more than halfway down the page. Yep, I see it. And you think that there should have been a checkmark in the contention box and a dollar amount there. Exactly, Your Honor, because it is our contention that a million-dollar SIR is extremely unusual and that that large of a retention would have had to have been reported. And that's the allegation that we're making. I don't know if it's unusual. I mean, I had commercial clients with million-dollar self-retentions. It was just kind of routine. Well, I will say that, again, we've asserted that in the health care industry, it's unusual most of the insurance policies that I deal with in the health care industry. A lot of people like to keep a self-insured retention so that they can control the defense and don't have to tender it. Indeed. But, again, it is our allegation that in the hospital industry, that is an extremely large self-insured retention that would have caused us to not contract with that company if their self-insured retention was that large. Do you have any case that you could refer us to that says that a failure to list an SIR in a certificate of liability insurance is either a negligent misrepresentation or an omission that constitutes an actionable claim? Right. I do not have a specific case in that context, Your Honor. All the cases we have cited to have been the negligent misrepresentation cases generally. I mean, when I read this case, I thought, you know, well, where would it end? I mean, if you have an action for an omission to state, what more would you have to state here? I mean, you've got these dollar figures. It says very clearly this is not the insurance policy. I was a business lawyer for 36 years. When we did our due diligence, we would look at these as nothing more than an invitation to look at the policies. And you don't rely upon the certificate of insurance for anything other than that you need to look at the policy. Now, if you're saying that you've got to put the SIR here, what else do you have to put? You have to put the terms and conditions and the exclusions of each of the policies. And if you don't do that, you have omitted to state a material term. Is that your position? No, I'm not here to state what should or shouldn't be. Yes, you are. You are indeed saying that. And that's what I'm concerned about. I don't get it. I don't understand how failure to list self-insurance on a policy where they're not the ones that are doing the self-insuring constitutes an omission unless you're saying that under Washington law an omission to state a material fact about each and every one of the conditions of the coverage that is listed here must also be listed. Your Honor, remember that in the context of hospital liability, hospitals are going to be vicariously liable for these people that are in the industry. But there are all kinds of industries that are similar. I don't think the hospital industry is unique in that, is it? Well, we might differ on that. You might disagree. But in any event, Your Honor, remember there's two aspects of the misrepresentation. There's the affirmative that we've been discussing, and then there's the omission. And you agree there is no affirmative misrepresentation here. We're talking about the omission, right? I do not, Your Honor, because our allegation is that within the insurance industry, it is our allegation that any policy that's listed other than in the excess box is considered a primary policy. So they listed this as a primary policy, and it's our position, our allegation on this 12B6 motion, that it is indeed an excess policy because of the self-insured retention being the million dollars. Now, remember that on the omission side. And the case for that is? Well, the case for that is the cases that we've cited about self-insured retentions can be primary insurance. And we've cited, too, the Odessa case. We've cited, too, out-of-state cases that hold that depending on the circumstance. And that's the important thing. Well, you say it can be, but in this case, did you allege that was the case here? As I was speaking with Judge Kleinfeld, in our supplemental allegations that would have been part of an amended complaint, we did allege that, yes. Well, we're talking about the briefs, right? Well, we're talking about the briefs that the court invited us to give that we said. But it was never in the complaint? Not in the original complaint. It would be in the amended complaint if we were allowed to follow. If you're allowed to follow. I still have a problem with your ‑‑ I'm now imagining your amended complaint, and it pleads it's an industry custom to list the self-insured retention. I'm imagining that. But I look at the certificate of liability insurance, and the place that you're describing, it says excess umbrella, and then something I can't read because I think it's a Xerox of a fax or something. Excess umbrella liability. And I know what an umbrella policy is. Most people who have any substantial assets have one. And I know what an excess policy is, because many businesses that have a risk of substantial liabilities have an excess policy. And the way those work is you have, say, a $5 million umbrella, and it has ‑‑ it only starts at $1 million. So other policies fill in below that million dollars. For example, if you're an individual, you might have a $5 million umbrella, and it only plugs in if you have ‑‑ it only plugs in without a gap if you have a 100, 300 auto liability policy or a 500 million auto liability policy, whatever that particular carrier offers. And it looks like that would be the wrong blank, because this professional liability policy is not an umbrella policy, and it's not an excess insurance policy. It's a professional liability policy with what might be called a deductible or what might be called a self-insured retention. And it is our allegation, Your Honor, that because of the very large self-insured retention, that this policy is an excess policy. So that's why we believe it should be there. Because, again, it's our position, our allegation in this case, that any policy that sits on top of a substantial SIR is indeed an excess policy. I think that's a convention of the way insurance is labeled. We have ‑‑ You're saying you'd like it to be. Well, I'm saying that's our allegation in this case, or would be if we were allowed to file the amended complaint, Your Honor. What you're saying is that you wish that were the convention. If that's your druthers, but you didn't list it yet, you'd like to be able to list it. And we submitted the declaration of an expert agreeing with that, that that is the standard within the industry. Do you want to save any of your time? I would, thank you. Okay, very good. For Lexington, are you going to have several of you speak or just one? We're going to break this up a little bit, Your Honor. Okay. And may it please the Court, my name is Michael King, and along with Jeff Lavis and I I'm from Kearney-Badley here in Seattle, and we represent the Lexington. Mr. David Brenner is representing the broker parties. I'm going to go first. I'm going to try to leave him a few minutes to address some concerns, particular to brokers. My big concern on this case is was it an abuse of discretion not to grant leave to amend? And it wasn't because the amendment would have been futile. And let me demonstrate that. Why? Suppose, I mean, you heard me say that as I understand the insurance industry, this just isn't an umbrella policy or an excess policy. Right. But why can't they plead the contrary and get some hired expert to say what they want? That's exactly what they've done. They've pled the contrary. They've asserted. That's litigation. But that's not what. Why can't they and why don't they have to get leave to amend to do it? They can, but it's correctly rejected because it's an implausible allegation. Why is it implausible? Because it's basically an expert testifying to a conclusion of law. That's the critical thing to understand. No, just an industry. It's an allegation about a supposed industry custom and practice. Where does that come from? Where is it plausible that that's actually the industry custom and practice? I think that Judge Smith, Randy Smith, put his finger on the nub of the problem here. When you finally get clarified that their misrepresentation, that they're relying on is the supposed failure to list this policy in the excess box. They say that having an SIR makes this an excess policy. They have an expert who's going to come in and who's going to go on about custom and practice and say, oh, if you have an SIR, then it always becomes an excess policy. And Judge Smith, you said, well, not as a matter of Washington law. And you see, that's the problem. Because this is really an expert who is going to come in and he's going to testify to a conclusion of law. And we all know that when the expert opinion is nothing more than a conclusion of law, it doesn't count. It seems to me like a reach. He's really not. He's just talking about how people typically fill out this form. And if he shows us a bunch of forms where it was liability policies that were not umbrella policies, but where there was a substantial self-insured retention and people filled it in the way he says, that would show a custom, even if it's a wrong custom. No, Your Honor, because it's not plausible that's ever going to be established. Remember, since Twombly and Iqbal, this Court has said that in terms of plausibility, this fundamental inquiry is whether the allegation of the proposed amended allegation is sufficiently plausible that it is fair to subject parties in my position. When Iqbal and Twombly came out, I expected that to be the way we would get rid of the complaints by crazy people that plead that little green men from Mars abducted them and did strange things to them. The Supreme Court has subsequently interpreted it to apply to a whole lot more cases than those. That's right. However, I've never seen it applied to a case like this, where somebody proposes to have an expert testify about industry practice. What's your best authority? The best authority, Your Honor, is to apply your precedent since Twombly and Iqbal, which have articulated the test system. Which one? Give me your best case. You know, the name of the case is case name. I saw it yesterday. It's an opinion by Judge Rawlinson. I will submit it as a supplemental citation of authority. What she says is that in this circuit, the plausibility inquiry involves this question. You look at the allegations, and I submit this applies as well to proposed amended allegations. And you ask yourself, is it plausible that it is — is it fair to submit the defendants, the responding parties, to the further expense and burden of — Oh, you're talking about the general language.  Okay. What I want is something about where a party proposes to have an expert testify about industry practice, and the court says what that expert would say is implausible. Do you have something like that? No, I don't have an authority precisely like that, but I think this case is going to become that authority, and here's why. Because the law is overwhelmingly that this notion that because you put an SIR in, you convert what's otherwise a primary policy into an excess, is contrary to the law. It is contrary, in fact, to the treatise authorities, which say, look, folks, this business about describing a self-insured retention, a retention, as a form of insurance is just wrong. Keaton says that. Appelman says that. And it is a question of law. Look at the Washington Law. It is in Keaton? Yes. Appelman says everything. It's just an encyclopedia. But Keaton has some useful opinions. Yes, he does. And I can submit that to you. It's on pages like 13 and 14. Is it in your briefing? It is not in the briefing. I like Keaton. I happen to remember where it is. Yes, pages 13 and 14 of the 1988 edition. And I will submit that to you. I saw the Appelman statement. I found the Keaton reference. 13 and 14 of which edition? Pages 13 and 14 of the 1988 edition, Your Honor, the Keaton and Andrus book, the purplish book. I've got it. My question relates to affirmative misrepresentation. Because I read about what Washington Law says about affirmative representation. And, therefore, I had trouble with the very thing you're talking about. And that's why I wanted to ask you about it. My worry, I guess, goes into the misrepresentation by omission. Yes. Because when we get to the misrepresentation by omission, then it seems to me that I have to go to Van Dinter, Washington case. Agreed. Which suggests that it can arise by a fiduciary relationship or similar relationship. Right. But the second prong is the one that worries me. And that is, if necessary, to prevent a partial or ambiguous statement of facts from being misleading. Now, that particular is Washington Law. And I guess I tried to figure out, given that area, which is Washington Law, then the district courts seem to run right off and say, well, it's easily obtainable. I don't think easily obtainable is where we are here. It doesn't matter whether it's easily obtainable or not. You go back. It's whether it's partial or ambiguous statement of facts from being misleading. And then it seems to me there is a factual dispute regarding whether the industry standards mandate that it should have been included in the box. And here's the problem with that. And that's the worry that I have that it seems to me on that particular issue, we can't, as a matter of law, suggest it. Actually, you can. And here's why. Because we have established Washington Law on these accord forms. And this is the postal weight decision. And it is very clear that these accord forms are nothing more under Washington Law, and everybody understands this, than a certificate that informs the recipient thereof that insurance has been obtained. On the back of that form, it says you cannot rely on this form to tell you about terms and conditions. And the second related point is that, and this goes to Judge Smith's, Presiding Judge Smith's concerns about the scope of the duty that you would have to imply under Washington Law that would be created. Would Washington Law support the creation of this duty? Because what we've got here is the present situation. You get a form. There's a telephone number. You call. You ask for a copy of the policy. You answer the question. His client, the hospital, is in the best position possible here. It's an easy matter. You get the form. You call. The form says don't rely on the form. It's just informational. It's proof of the fact of insurance. Do not rely on the form for anything else. That's well established. It's on the back. Wait a minute. I'm looking at the back. I don't see what you're claiming. I see on the front where it says this is a matter of information. But that doesn't accept the 8. It's not ER-88. I don't see the words you want. Nor does it affirmatively or negatively amend, extend, or alter the coverage afforded by the policies therein. But they're not claiming. They're not claiming that it amends or alters the policy. So why does that matter? And on the back and on the front, it says you don't use this form to draw conclusions about the content of the insurance. It's plain as day. There isn't a case that says that. No, it doesn't say that. It says it doesn't confer rights on the certificate holder, and it doesn't amend, extend, or alter the coverage. And it says it's information only. But information still has to be true and not misleading. Your Honor, that ---- I mean, everybody who provides a certificate knows that the reason they're providing it is that it's used to satisfy third parties that there's insurance. No, but as to the terms and conditions of the insurance, the fact of insurance, yes. But this document is not a prospectus. This document is not an appraisal. And there isn't a case in the country that says ---- Wait. It doesn't say that. It doesn't ---- where's the word terms now? Well, it's on the front and the back. It does not amend, extend, or alter the coverage afforded. The policies ---- It doesn't say terms. The policy limit is one of the terms. And the policy limit is disclosed. It says 5 million each act. Your Honor? 5 million aggregate. And ---- You've got to call if you ---- this tells you there's insurance. So that does represent that it's 5 million. And if it was actually only 2 million, I think that would be an affirmative misrepresentation. I disagree. In the use of these forms is the information. It is not something for that ---- That's information. It is information. Information is what the tort of negligent misrepresentation is about. These forms have never been applied in that fashion by any court to hold a broker liable. Nonsense. I happen to remember a case, Phillips, from the State of Alaska in 1968, that did exactly that, following a whole lot of authority outside. There is not a whole lot of authority that these accord forms are the subject of action. I think this started with ultramarys versus touche or something like that. That's the accountant case, Cardozo. Exactly right. But let's remember ---- So given this hard argument that we're having or at least questioning that we're taking, should we send this over to Washington and ask them? I don't think you need to do that, Your Honor. I think you've got sufficient material here to do the eerie evaluation. And let me go back to presiding Judge Smith's point. You're really talking about the classic kinsman line drawing question. Is the Washington Supreme Court, when it's already declared that it views these documents as merely informational about the fact of insurance and nothing more, are they going to say that we're going to take the duty off of the party who is in a position, they get this form, it has these statements, doesn't say anything about SIR one way or another about this policy, which is listed as other. You can call and ask. But that's the very thing we're talking about. Yes, but here's the other point, Your Honor. I mean, omission is the very problem that we're really talking about. We're past affirmative misrepresentation. We're on omission. And we've got ---- there's no question that we have industry standards, factual dispute about whether the SIR should have been included. I don't agree. I don't think you have a plausible allegation that the SIR makes this. It should have been included. You have an allegation saying that the hospitals out there get all anxious when an SIR approaches a million dollars. How is a broker supposed to figure that out? See, that's the other part of this. How is a broker in a position to figure out what the peculiar concerns of the hospital industry are about SIRs? And if it's going to be for hospital industries, what about construction companies? What about product manufacturers? What about all sorts of third parties? You see, this is what doesn't make sense here. And this is why you can say this is not a plausible allegation that states a cognizable complaint that should be allowed to go forward. These allegations they wanted to put in an amended complaint are an exercise in legal futility. You know, I'm curious about something. You've made a very strong argument on a point that strikes me as a difficult one for you, the Iqbal argument about implausibility, Iqbal Twombly. And I'm just curious, nobody's mentioned reasonable reliance. Judge Milensmith mentioned that the ordinary business practice is regarded as an invitation to inquire. Exactly. And that's what I'm wondering. I think I must be missing something. And I must not be explaining it fairly. I'm wondering why it wasn't a no plausible possibility of reasonable reliance case. Yes. In fact, if I could yield the floor to the broker's lawyer on this point, because he is most familiar with those points. Okay. Thank you. That's exactly the point. Please introduce yourself. Yes, I'm sorry. My name is David Brenner. I represent the broker, USI Services, Inc., the appellee. And I think what you've put your finger on exactly the issue here, which is there's no right to rely in a circumstance where the information is as easily discovered. Let's say we reject your point that no third party can rely on a certificate of liability insurance because they're not in privity. Let's say we reject that because of the long line of authority on negligent misrepresentation where third parties can be expected to rely. Could the hospital plausibly, reasonably rely on this certificate to think that there was not a self-insured retention? No, they can't for a number of reasons. Why not? Under the negligent misrepresentation law and under the specific law that has to do with the limited duty of a broker to third parties. That's a particular body of law that requires something. I said let's set that aside because there's a long line of authority where brokers get stuck on these things. Often a third party does rely, for example, on a certificate that there's workers' comp for a sub. We're really not going under the Washington law about imposed on the fiduciary relationship or the similar relationship. No, I think we are, Your Honor. Well, frankly, I'm focusing on if necessary to prevent a partial or ambiguous statement of facts from being misleading. And that's why I think my colleagues' questions are pretty good. And I think, I mean, my worry is that the district court jumped to the idea that it could be found. Well, he did rely... And that seems to me to be an affirmative defense, not something where it deals with if necessary to prevent a partial or ambiguous statement of facts from being misleading. That's why I'm worried this is a question of fact he shouldn't have found. It was a question of law. Well, he made a ruling as a matter of law, just like Van Dinter did and just like the recent court of appeals case following Van Dinter did, Washington Court of Appeals, Austin v. Edel. Austin v. Edel is a 12B6 decision decided under the Washington lower threshold for pleading than Iqbal. And it involved not a certificate of insurance but a form document, a real estate sales disclosure document, and the argument that the complainant made, the purchaser, was that the amount of local improvement district rates was not disclosed. What was disclosed was the existence of a local improvement district. That was fine. There was no affirmative misrepresentation, and the only issue was was it an omission not to state the amount of the rates. Just like here, there's the omissions alleged is that the amount of the SIR wasn't stated. On a 12B6 higher standard than Iqbal, the court ruled as a matter of law, there's no obligation to state that because it was as easily discoverable, one of the five elements under Van Dinter. That may very well solve the problem, but I just want to be sure I understand the point from your perspective. There is no Washington case, is there, that specifically addresses the certificate of liability insurance and its various disclosure statements and that deals with the question of omission to state material facts. Is that correct? There is no case that deals with it in that way, but there are three cases that say specifically. One district court and a federal district court and a Washington Supreme Court case and a Washington Court of Appeals case that say that the purpose of a certificate of insurance is narrowly bounded to just the existence of insurance. That's all that it does, and you had it exactly right, Judge Kleinfeld, when you said early on that it's a road map to go to look. It's a road map to inquire, and that's why Austin v. Edel and Van Dinter are exactly on point because this whole system is one of limited disclosure. You see, Judge Smith, the reason why there's no problem with partial disclosure here is that this entire system is based on partial disclosure. This is a form document. It's a scribe's job. It's just a minor service that a broker offers to fill in this form and say here's the policies that have been written, and that's why Chugach, Postal Wait, and International Maritime all say that's all this certificate does. It just shows the existence of, in this case, these four policies. And then, just like in Austin v. Edel and Van Dinter, it's up to the recipient of that, who isn't even a certificate holder here. It's just a third party who reads this thing. It's up to them to pick up the phone and ask if they want to know about something that's not disclosed on the form. That's how the system works. Which were the two Washington cases? Chugach and Postal Wait. Chugach is Postal Wait, Supreme Court. Chugach is Judge Layton. And International Maritime is a court of appeals case. And their case is the hospital says, well, these are just about contract and trying to extend the insurance rights by contract. But the point is those cases are about the purpose of a certificate. It's fundamental Washington law, and they cite a lot of other cases from around the country in Chugach, that say this is all you get when you get a certificate. It's your burden if you want to know more to ask. And that's why these disclaimers are so important. They're a critical part of that as well. Any other questions that my colleagues have? Thank you. We'll have a little, I guess, additional time left. Thank you, Your Honors. Thank you. Thank you. Don't rely on this form for anything. That's the defendant's position, that it's not worth the paper it's printed on. Well, no. That's not what they're saying. That's not what their position is. They say you can rely on it to know that there's a professional liability policy issued by the issued for medical staffing network, and it's a claims made. Incidentally, on claims made, do you have any problem with the 2007 date on claims made? Was the claim made within the dates? I believe so, but I'm not positive on that date, Your Honor. And it says which insurance company. So they're not saying don't rely on it for anything. They're saying you can rely on it for that and then make a phone call. But then again, you even asked about if it said $2 million or $5 million, can you rely on this for anything? The idea is if I have to call to get the information, then why does this document need to be? Okay, it says $5 million. If it had been a $2 million policy, that would be a misrepresentation. But counsel said no it wouldn't because he said you can't rely on this for anything. You've got to call. You've got to verify everything. You don't have to go as far as what he says, don't rely on it for anything. And it sounds like just kind of an overstatement. So the issue, and Presiding Judge Smith asked at the beginning, where's the line drawn? Of course, remember, we're talking about negligent misrepresentation, the duties to act reasonably. Well, we have many of those cases, and that can change from case to case. As a medical malpractice lawyer, every case I have requires expert testimony to talk about what did the doctor do in this case, whether it was reasonable or not. Here we've alleged and we've even provided an expert declaration that says what they did was not reasonable. Forgive me, counsel. I'm sure I understand. I thought you said you weren't talking about affirmative. You were talking about omissions. Do you apply the same standard to omissions that you do to affirmative? Yeah. It's still the duty to act reasonably. Okay. And the question was, was it reasonable, agreeing with Judge Randy Smith's question, to leave out the million-dollar SIR, and it's our position that it was not, and that's our allegation at this stage. It was noted, again, the judge said that we have not shown. Again, we don't have to show anything at this point. This is an allegation stage. But our allegation is it was unreasonable and it was misleading. And, again, by the way, and I agree with Judge Randy Smith on the issue of whether it's easily obtainable as a separate category from whether it's partially partial and misleading. That's a category unto itself. If the statement is partial and needs to be corrected to avoid it being misleading, that under negligent misrepresentation law of the State of Washington, it is an actionable claim. We have alleged that. That by itself is sufficient for us to defeat the motion that was done in the lower court. Why wouldn't it just be, leaving aside the very strong statements that your opposing counsel made about how nobody's supposed to rely on this for anything, leaving that, totally ignoring that, why wouldn't it be unreasonable to rely on this instead of just making a phone call and asking to see the deck page? When it doesn't say there isn't a self-insured retention, it doesn't say there is, and it's professional liability policy, it's not an excess or umbrella policy, why wouldn't it be unreasonable to rely on that, this alone, to indicate that there's no self-insured retention? And that's a factual issue, Your Honor. And, certainly, if that's their defense, they can come in and say. Sometimes there can be negligence or no negligence as a matter of law. And it is our position in this case that we have alleged in our supplemental briefing, as we've discussed earlier, that hospitals in this industry rely on the certificates of insurance and that they are dealing with so many of these that it's overly burdensome for them to get the policies. Do you have a duty to be reasonable? There's no... In other words, as an observer, a reader of the certificate of liability insurance, does that person or entity have an obligation under Washington law to be reasonable? I think that would probably come into the issue of reliance and whether our reliance was reasonable. And, again, it's our position that that's a question of fact. Again, if they want to say what they did was reasonable and what we did was not reasonable, that's fine. But I'm just saying, let's just say hypothetically you're correct, and if your statement is we never called, we didn't look, we don't do anything like that, we just look at this policy, can't the district judge say that's not reasonable? No. Out of luck. Right. Because, again, our allegation is that that's what's common in our industry. And, you know, going back, for instance, to the Austin v. Edel case that was cited to you about that being a 12B6 and it was dismissed, remember that in Austin v. Edel, the duty to disclose was statutory. And so the court said, well, we've got a statutory duty, we're in a small little box here, so they didn't violate that statutory duty. That's why it was unreasonable to rely on these claims that you're making that go beyond the statutory duty. We have a common law duty here, and we have defined it through our allegations and through the use of our experts that said what they did was not reasonable. But in effect, if I understand you correctly, because of the reliance factor, the reasonableness cuts both ways. You could not, if there is an omission to state a material fact here, you, your hospital client, could not act in an unreasonable way and be able to take advantage of that, right? I would say that if a fact finder determined that our reliance on the certificate of insurance was unreasonable, then we would not prevail. But that is not a decision that can be made at this stage. Okay. Thank you. Gentlemen, thank you very much. I can tell that you all feel very strongly about this. There are very few people that feel that strongly about insurance, but we got to hear some of the advocates that feel that way. We got to find some judges. Indeed. Indeed. So the case just argued is submitted. We are indeed adjourned for the week, and we thank you all for your attention.
judges: Kleinfeld, Smith, Smith